Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 5th Division, the Honorable Justice Mathias DeLore presiding, case number 1-9-1-8-9-9, People v. Allen Kusta. Good afternoon, everyone. Welcome to the Illinois Appellate Court, 1st District, 5th Division. We're going to ask the lawyers who are going to argue today to please introduce themselves and tell us whom you represent. Good afternoon, Your Honors. I'm Carl Leonard. I represent Al Kusak, the appellant. Thank you, Mr. Leonard. And for the state? Good afternoon, Your Honors. Assistant State's Attorney Joseph Alexander on behalf of the people of the state of Illinois. Thank you very much, counsel. We're going to allot about 15 minutes for each side. The defendant will have an additional five minutes for rebuttal. Please understand we have read the briefs and we're very familiar with the facts of the case. We may adjust the timing if we have a lot of questions or if the argument becomes repetitive. With that, Mr. Leonard, you may proceed when ready. Thank you very much, Your Honor, and may it please the court. As I mentioned, I'm Carl Leonard. I'm from the Exoneration Project, and I represent Al Kusak in this appeal. The circuit court erred in dismissing Mr. Kusak's post-conviction ineffective assistance of counsel claim at the second stage without an evidentiary hearing. Counsel's ineffectiveness, as we mentioned in our brief, stems from the failure to seek scientific testing until day 10 of trial, testing that would later refute the centerpiece of the state's case against Mr. Kusak, the crime scene reconstruction. At trial, the jury was presented with two basic theories as to how Mrs. Kusak died. Number one, it was murder. And number two, Mrs. Kusak, who the evidence showed had this fear of burglars, had an alarm system installed in the house, told her friends she had a gun for protection. She woke Al up. She thought through the noise downstairs, sent him downstairs, got her gun, packed it, fell asleep in bed. Two hours later, the gun goes off and she dies in an accident. Obviously, the jury chose option one, that this was a murder. To get there, the jury had to rely on the reconstructions of Rod Englert, this crime scene reconstructionist. Without Englert's reconstruction, the evidence would have fully supported Kusak's defense that this was an accident. The jury had no way of knowing that Englert's reconstruction was wrong. And that's because of ineffective assistance of counsel. And I'll get to exactly what... Oh, I'm sorry, Your Honor. Mr. Leonard, the state spent a great deal of its time making their point that the claim was forfeited or waived, because this was all litigated after the trial in the post-trial motion. And now you're basically doing the same thing all over again. Why is the state's argument wrong, in your opinion? So, it's wrong for a few reasons, Your Honor. Number one, forfeiture does not even apply here. And number two, if it does, at least one of the exceptions do. I think it's important first to talk about exactly how we got here with this forfeiture issue, because I really do think it was fundamentally unfair to Mr. Kusak. The state never raised forfeiture below. The circuit court did not bring forfeiture up during argument on the state's motion to dismiss. The first time it comes up is when the court issues its order granting the state's motion to dismiss. Had Mr. Kusak been on notice that this was at issue, he would have amended his petition or just said during argument, to be clear, when I have raised my Sixth Amendment right to counsel, I'm talking about all counsel, trial counsel and appellate counsel. He didn't have the opportunity to do that. And he should not be deprived of the opportunity to have his Sixth Amendment right to counsel claim heard, a right fundamental to the administration of our criminal justice system, just because he did not have the foresight to raise this on direct appeal. For good reason, I would say. There's two reasons that the forfeiture doctrine doesn't apply here. One is that the record itself was not sufficient to invoke forfeiture. But two, this was not the law at the time the direct appeal happened. And I'll start there. Mr. Kusak's direct appeal was decided in 2016. This Veech case, which we premise the finding of forfeiture on, wasn't decided until 2017. The very first line in the Veech opinion says, in this appeal, we examine the propriety of a growing practice in the appellate court of declining to consider ineffective offices of counsel claims on direct review. It notes later in the opinion, paragraph 39, that the appellate court had widely followed precedent in refusing to consider ineffective assistance claims. It cites an Illinois Supreme Court case that came before, which talked about a preference for collateral review for deciding ineffective assistance claims. It cites 35 appellate court cases refusing to consider ineffective assistance claims on direct review, including Veech itself. When Mr. Kusak's direct appeal was pending, the appellate court decision in Veech came down saying this is not a decision that should be raised on direct appeal. Well, don't you think that I agree that Veech may have made things clearer and resulted in a clear path for appellate courts, that they were trying to point out that as courts are reviewing, we were not following the law that was there. I think it's important to note that if there is an adequate record, that the insufficiency or the inadequacy of counsel could be raised on direct appeal, that it wasn't as drastic a change in the law as you are describing. Two things, Your Honor. Here, the record was inadequate, and I'll talk about that in a moment. But in terms of the exceptions to the forfeiture doctrine and how it would be fundamentally unfair to apply it to Mr. Kusak, even if he should have raised this on direct appeal, look at the way that this case played out. Mr. Kusak did not raise ineffective assistance of counsel on direct appeal. He filed his post-conviction petition, raising it as a collateral issue, which those 35 appellate court cases said was the way to do it, within six months of the end of his direct appeal process. It's clear when you look at the procedural history of this case that this was a claim he intended to bring, and that he brought it out what he thought, based on the existing precedent, was the appropriate time to bring it. It would be fundamentally unfair to say, you don't get to have that claim heard at all, because you didn't raise it at the appropriate time. And I think Veatch itself speaks to that. When you look at Veatch, Your Honors, that was a case that arose on direct appeal. The defendant tried to say, I received ineffective assistance of counsel. Appellate court said, save that for collateral review. And the Supreme Court reversed and said, no, if he has an ineffective assistance claim, let him raise it now. The idea being that the Sixth Amendment remedy should be, the guarantees provided by the Sixth Amendment should be addressed at the first opportunity. Well, isn't the distinction to be drawn based on the question of whether all of the information necessary to establish ineffective assistance is contained within the trial record, as compared to the cases where it has to be developed through evidence outside of the trial record. In the latter, it's raised in post-conviction. In the former, it has to be raised on direct appeal. And I'm not sure that Veatch changed that rule. They just said, I believe that if it can be established based on the record before the court, then it has to be raised on direct appeal. So, I mean, I don't think this is any real change in the law. And I agree, Your Honor, that Veatch stands for the proposition that if an issue is on the face of the record, it can be raised on direct appeal. The record here was not sufficient. And for that, we can start just by looking at the state's brief, in which it concedes that much of what is necessary here is actually not within the record. The state notes that there's nothing in the record suggesting trial counsel did not understand cylinder gap gases. They say that there's nothing in the record suggesting they did not understand sodium rodizinate testing. Nothing to indicate counsel could not rely on the opinions of hired experts. Nothing to indicate they needed to consult with another expert. A lot of this is missing from the record. But also missing from the record is we don't know what Mr. Englert would have testified to had he been confronted with this. We know that he testified that the way he was able to tell this was an accident, as opposed to – that the way he was able to tell this was a murder, I should say, as opposed to an accident, was because there was no soot on the pillows. If that's true, if he meant it, then presumably he would have testified that he was unable to draw that conclusion. We also don't know how he would have – what the cross-examination would have looked like. So in option number one, Mr. Englert never would have testified that this was a murder. Option number two, we would have seen the cross-examination. None of that is within the record. To get there, to argue that the record is sufficient, we have to make all sorts of assumptions about what Englert would have said had it been revealed that his finding that there was no soot, which was his predicate for finding that this was a murder, was wrong. So, Your Honor, I would say the record really is insufficient on that point for us to invoke the forfeiture doctrine. Can I ask you a question? When did it come out that there was soot on the pillow? When did that come out? That testing was not completed until several months after trial, Your Honor. It came out after trial. The defense renewed the motion that they had raised for the first time on day 10 of trial. They renewed the motion and said we'd like the testing done. The state did not oppose. The testing was performed at the crime lab, and then it came out that there was soot there. So this happened several months after trial. But during trial, we know that the state's expert only visually examined the pillow in question and did admit that only through testing would it be definitive. And the defendant's experts also, there was some testimony that they didn't think it was blood. It was definitely not blood and that this testing should have been done. So, I mean, even at trial, there was an indication that the state's expert may be wrong about that being blood and not soot. I think, Your Honor, respectfully, that's only partially right. The person who said this was clearly not blood was Rod Englert, the defense expert, the state expert, I should say. I'm sorry. No, the defense expert. I meant to say that. The state's expert. It was Englert, the state's expert, who said it's obvious. They asked him, why didn't you do the sodium rhodizate test? And he said, because it's obviously plotted blood. There's no need to do the test. I'm sorry, but the defense expert also went on that he had no attributes of blood. The defense expert said in his expert report from 2013, which was two years before trial, that the only way to know this would be to do a sodium rhodizate test. For whatever reason, when you look at the testimony of the defense expert who talked about this, he says that he didn't know about this stuff until Monday. That's what he says. I found out about this on Monday, meaning midway through trial. That was when he was finally presented by the defense with the photographs and the other information to actually make this point. So this is a situation where the defense counsel did not provide the expert with the information that would have led to this. But more importantly, the state tendered to the defense prior to trial, discovery that showed that they had questions about whether this was blood or not. That's why they flew Englert in from Oregon, had him look at this at O'Hare Airport, and that's where he said, we don't need to do this additional testing. This is blood. So the defense was on notice that there was a question about this and did exactly nothing in response to that. That's why they lost their mid-trial motion and their post-trial motion, because the state and the court said you were on notice. You could have and should have. That was the ruling of the trial court. You could have and should have done this testing. So I agree that this issue was there and that the defense tried to get, they belatedly did too little too late to get the testing done, were denied. So they asked questions to apparently build the record for when they would do their post-trial motion, but they didn't have any ammunition to actually back it up because of their ineffectiveness. So they asked, are you sure this is blood? But they didn't have any way of actually impeaching his statement because they didn't bother to do the testing. Everything that came later, and a lot of what the state bases its argument on here is the testing that came post-trial. There was a new expert who testified for the state from the crime lab who talked about the soot patterns and how if the gun was in contact with the pillow, it would have torn a hole in the pillow so it couldn't have been in contact. None of that is in the record for what happened at trial. What the state is asking this court to do is imagine a different trial where all of this other evidence was introduced. Englert never said there wasn't soot. We have this new testimony from Ms. Fundell from the crime lab. Let's imagine what that trial would have looked like. That's not the inquiry that we're supposed to do. The inquiry is whether our confidence in the verdict is undermined by what actually happened at trial and what should have happened if this testing had been asked for. That's the inquiry. Let me ask you a very simple question. All of this information was known prior to the filing of the Notice of Appeal, wasn't it? Yes, Your Honor. So it's in the record. It was in the record. He could have appealed on that issue. All of the information was there prior to the filing of the Notice of Appeal. So it is part of the record. Right, Your Honor. What I'm saying is that when we start going down these imaginings of what trial would have looked like if Nicole Fundell had testified and when we look at what the state presents as, look, there was this mountain of evidence of guilt. That's not evidence that the jury heard when they tried to redo the crime scene reconstruction. But I think Your Honor's point is that he could have raised this on direct appeal, and obviously I wish he would have. He would have. We wouldn't be here today. But the point is, denying him any opportunity to have his ineffective assistance of counsel claim heard is a drastic remedy that is not in keeping with what Leach says, which is that these claims should be heard at the earliest opportunity. I don't think it was unreasonable for Mr. Kustak and his counsel to rely on the 35 appellate court opinions that said this is not an issue for direct review, or the Supreme Court opinion saying that there's a preference that these be handled on collateral review. The panel is correctly saying this wasn't a drastic change in the law, maybe so. But the point is, he relied on what those cases said and raised the claim at what he thought was his first opportunity immediately after his direct appeal concluded. Denying him the opportunity to have his claim about something so important as the right to counsel heard at all because of the timing in which he pleaded it seems fundamentally unfair to me, and fundamental fairness is an exception. He could have satisfied that issue by filing ineffective assistance of appellate counsel in his post-conviction petition, but he didn't. His post-conviction petition pleads ineffective assistance of counsel. The circuit court does some hair splitting and says, well, you were referring to trial counsel, not appellate counsel. I'm not sure that the Sixth Amendment is really amenable to that sort of hair splitting. What were the allegations of ineffective assistance of counsel? The allegations relate to the testing, Your Honor. And if there is an issue there, then that's clearly on me. I wrote the post-conviction petition. And if that's where the ruling is going to come down rather than assessing the merits of the petition, what I predict Mr. Kustak will inevitably do is file a new post-conviction petition saying I didn't get reasonable representation of post-conviction counsel. This claim still needs to be heard, and we wind up right back here if we don't deal with the case on the merits. But the point is, he raised a Sixth Amendment claim. He said I got ineffective assistance of counsel, and then the circuit court later, not at the state's urging and not at anything it brought up at argument, said, oh, you only were talking about trial, not appellate counsel. So I don't think that Mr. Kustak should be denied the right to have his claim heard at all on that basis either. That, again, seems fundamentally unfair to me. Go ahead, Justice Hoffman. Go ahead. Is a trial judge required to give reasons for his conclusion? Is there a case that says that? I'm not sure I understand, Your Honor. He did give reasons. Trial judge said, I think in this petition he's referring to trial counsel only. That's the trial judge's conclusion. Was he required to give any reasons for that conclusion? I don't think so, Your Honor, but I think he did. He gave an extensive written and oral opinion elaborating on it. And did he have to rely upon the arguments of attorneys in order to address the issue? No. He comes to a conclusion as to what the petition means, and then he rules on it. Right, Your Honor. We're not arguing at all that that process was against precedent or something of that nature. What I am arguing is that the application of that results in a situation where someone who reasonably relies on precedent never gets to have his claim heard about his constitutional right to counsel, and that that is fundamentally unfair. Mr. Leonard, your time has expired. If you'd like to give us a brief conclusion, please. Thank you, Your Honor. The Sixth Amendment right to counsel is not a technicality. It's not something which can be glossed over where the state makes contradictory arguments post-trial, on direct appeal, and then now, or where the circuit court has contradictory findings. What the circuit court said is that in light of this new evidence, nobody can say how this happened. Nobody can say how Mrs. Kustak died. That is prejudice. That undermines confidence in the verdict. The Sixth Amendment requires more than what Mr. Kustak got here. He deserves a new trial. At minimum, he deserves an evidentiary hearing where these factual questions can be resolved. Thank you, Your Honor. Thank you. Mr. Alexander? Afternoon, Your Honors. May it please the Court. I'm Assistant State's Attorney Joseph Alexander on behalf of the people of the state of Illinois. In this case, defendant raises a claim of ineffective assistance of counsel. He raises that in his post-conviction petition. He did not raise that claim on direct appeal. And because he did not raise that claim on direct appeal, that claim is forfeited. The law is clear on forfeiture. You must raise a claim at the earliest opportunity. And in this case, the earliest opportunity was direct appeal. Now, defendant relies a lot on Veatch, saying that the law wasn't established, the law wasn't clear, there was precedent saying that you shouldn't raise it or you should raise it. But if you look at the cases in Veatch, a lot of those cases that the court talked about or listed, the reason that those claims weren't raised on appeal was because the records were insufficient. Furthermore, Veatch lists a few, well, I listed them in my brief, the cases that Veatch lists that says this claim could be raised on appeal. So the law has been, if you can raise a claim on appeal, if the record is sufficient, then you must do it. Veatch did not change the law. The law has been established for many years. And in this case, the record was sufficient to raise a claim of ineffective assistance of counsel. The record is very detailed in what was done and what wasn't done. And I know defense counsel points to the fact that we say in our brief that nothing suggests this or nothing suggests that. And if you look at the record, the fact that it doesn't suggest something is evidence of what was done and what wasn't done. And in this case, looking at this record, looking at the extensive motion that defense counsel argue prior to trial to secure testing, looking at the motion that he filed post-trial, looking at the hearing on the motion for a new trial. This record was clearly sufficient to raise this claim. Now the claim isn't whether counsel could have effectively cross-examined the witness. The claim that defendant raises is counsel was ineffective for not securing this testing or not getting this testing done early. We have, when counsel requested the testing, we have counsel saying that he had discovery. Discovery was tendered to him. He gave the discovery to his expert. The expert had evidence of this possible picture being in the state's experts report. It actually talks about this meeting at O'Hare and this photograph. It's referenced in the report. All of that is included in the record. So there was sufficient evidence in this record to raise a claim of ineffective assistance of counsel on Director Peay. Now, counsel argues that this is fundamentally unfair that he can't raise this claim. And if you listen to counsel's argument, if you look at counsel's brief, essentially he's saying forfeiture should not apply to him. But defendant has not given a reason why forfeiture doesn't apply other than he should have an opportunity to raise this claim. But he is saying, at least today, a little stronger, maybe, that despite your argument today and in the briefs, the state did not argue forfeiture when the post-conviction petition was being litigated below. It was the trial court that raised it in its decision. And from what counsel is saying, it wasn't even discussed in an argument at the post-conviction petition. That is correct. However, Your Honor, there is nothing that prevents the trial court from raising forfeiture sua sponte. The trial court can look at the petition, and forfeiture is a valid basis for denying or dismissing a post-conviction petition. So the trial court looked at the petition, saw that these claims could have been raised, and saw that it was forfeiture. And nothing prevents the state from arguing that the trial court's decision was correct. The state isn't arguing for the first time on appeal that forfeiture should apply. The state is arguing that the trial court dismissed this petition based on forfeiture, and that decision was correct. Furthermore, this court can affirm an appeal for any reason apparent on the record. And one of the important things this court has to determine based on Illinois Supreme Court precedent is whether these claims are forfeited. And the other issue is whether this court has jurisdiction. And I cite cases in my brief that articulate that point. So the fact that the state didn't argue it, and I also cited a case in my brief that talks about forfeiture not being waived on appeal in these instances. So even though the state didn't argue it, the trial court correctly determined that these issues were forfeited, and that decision should be affirmed. And that is what the state is arguing. Defendant argues that, you know, again, fundamental fairness should require the relaxation of forfeiture, but nothing prevented the defendant from raising this issue on direct appeal. Furthermore, nothing prevented defendant from raising this claim and overcoming forfeiture by claiming ineffective assistance of appellate counsel. So there were multiple opportunities for this claim to be raised and for defendant to circumvent forfeiture, and those opportunities weren't taken. And now, on appeal, he's saying that none of this should apply. He should get at least a third chance to raise this claim. But that's not the law. And Veach made it very clear. Again, as I said, and I don't want to be repetitive, but if you can raise a claim, you should. That is the law, and that has been the law before Veach. And this forfeiture shouldn't be relaxed because there's no merit to this claim. And we look at what counsel did and what counsel didn't do, and defendant frames this as counsel was ineffective for not securing testing. When we look at this record, when we actually read defendant's argument, it's not that counsel was ineffective for, you know, not securing this testing earlier. The real argument here is counsel was ineffective for relying on his hired expert. And if we look at the record, we see that the expert had all of this information when he wrote his report. And the expert testified at the evidentiary, I'm sorry, at the motion for a new trial, that he didn't specifically say this pillowcase needed to be tested. He talked about it in general. And so now you have an attorney who is not an expert in this field. He is not a scientist. He hired an expert for the very reason that he is not an expert in that area. He has a report after his expert has looked at the evidence, and it's not saying that this is absolutely necessary. And so counsel doesn't seek testing. And when we look at whether counsel was ineffective, we have to look at the facts and circumstances of this case. So saying that counsel was ineffective for not securing this testing because his, where his expert didn't require it or didn't say that it should be done on this pillowcase, essentially turns counsel into saying that because counsel didn't have the expertise, the scientific expertise to realize that this should be tested, regardless of what his expert said, counsel was ineffective. And that's not what Strickland holds. At most, this was a mistake. It can be characterized that. And Strickland holds that mistakes don't always equal ineffective assistance. The core of Strickland and the core of the Sixth Amendment is that defendants receive effective assistance of counsel. And effective assistance means that the state's case is subjected to an adversarial testing. And when we look at this record, that is what occurred here. This defense attorney was a zealous, diligent advocate for his client. And even though testing wasn't done, he was still able to cross-examine the state's expert on that fact. We look at the cross-examination and defense counsel starts with establishing that this test is simple. This test can prove definitively whether this is like blood or soot. And it's simple. You could have done it quickly, but you didn't do this. That was the tone of that cross-examination on that point. This test was simple, but you didn't do it. And that was presented to the juror. So counsel was able to cross-examine the state's expert on not doing this test. And with that cross-examination, even though the defense attorney couldn't say, well, he didn't do the test. So now we know that this is soot. So his reconstruction is completely inaccurate. It's invalid. He did say, you can't trust this reconstruction because he didn't do a simple test. So defendant wasn't deprived of challenging this reconstruction. And if we look at prejudice, again, I'll just touch on this briefly because it is detailed in our brief. There is no prejudice here. And when I say that, I say that based on breaking down defendant's argument. And this is outlined in his post-conviction petition, and it's suggested on appeal. His argument is because there was soot on this pillow, that means that our expert placed the pillows in the wrong order. And because the order was wrong, the entire reconstruction is invalid. You can't trust it. And that is not what that piece of evidence suggests. And we know this because we have defendants' own experts redoing similar testing and not placing that pillow first. Because it's defendant's argument that that pillow should have been first, meaning directly under the victim's head. But that doesn't hold water when we look at all of the other evidence, because the pillow that was directly under her head had a bullet hole in it. That pillow had blood on it. That pillow had hair strands in it. And his expert in testing placed that pillow first. And so we look at this evidence and we look at the fact that soot could have been played, could have gotten on that pillow from any of the other shots. It could have gotten on the pillow from it being moved. All of these things could have placed that soot on that pillow. And that was brought out at the motion for a new trial hearing. And so based on that, this pillow wouldn't rise to the level of having a reasonable probability of changing the outcome of trial, given all of the other evidence, including the medical examiner, the fact that the defendant had a motive, the fact that he told the gun seller that he was buying the gun for target practice when he claims he was buying it for his wife. And just to make, I would like to make a clarification. Defendant points out that we say that he lied on a federal form. That was an unintentional misstatement on my part. It was not a federal form. Defendant is correct that it was a sales slip. But the fact that it was a sales slip instead of a form does not negate the importance of that evidence in the grand scheme, in the totality of the evidence. And so we can't look at this pillow without looking at everything else. That's what Strickland commands, that we look at this evidence and in light of all of the other evidence, whether there's a reasonable probability. And in this case, there was not. And if unless there are any other questions. I mean, the state, you know, paid $150,000 to have this expert testify. And it certainly can be argued that the fact that he concludes that something, I mean, it's supposed to be an expert on blood patterns and reconstruction. And he can't you know, he makes this gives us opinion that that's blood that's not soot. Don't you think that sort of goes to undermining his whole credibility, if you will, or his way of coming to conclusions? Based on this record, Your Honor, I would say no in the grand scheme in the big picture. Was he incorrect about that? He was. Why was he incorrect? He was incorrect because he looked at this visually and said it was it was blood. He didn't do a confirmatory test and that was brought out during trial that was presented to the jury. We also know that defendants expert. Didn't look at. The report and say that I think he's wrong. He didn't say he looked at this visually. That might be a problem. We should test this pillowcase. What he said was generally this test can be done, but he didn't say that it needed to be done. And I think that's an important distinction. And so in that sense, it it might affect his credibility on that point, but it doesn't undermine the entire reconstruction. And again, I point to defendants expert stacking these pillows the same way, right? It's not that this was and I defended points out that I use the words dispositive and definitive and not using those to say that it's defendants burden at this stage at second stage to show that this would have completely proven him guilty. It's if this was if this were presented at trial, it wouldn't be what defendant attempts to make it. And he talks about this exculpatory evidence. This is an exculpatory because this doesn't prove anything. All this proves is that there was soot on the pillow and it doesn't show how it got there. It doesn't explain that it doesn't negate in any way the theory that defendant shot his wife. When we look at this pillow, this soot in the context of all of the evidence presented at trial. Mr. Alexander, your time has expired. Is there anything you wish to say in conclusion? In conclusion, Your Honor, for the reasons stated here, and those stated in our brief, we ask that you affirm the trial court's dismissal of defendants post conviction petition. Thank you. Thank you, Mr. Leonard, you have five minutes. Thank you, Your Honor. This does not negate in any way the theory that Kusak killed his wife. That's not what Englert testified to. That's not what the jury heard. The state asked Mr. Englert on direct examination. Is it the crime scene? Is it consistent with Jeannie Kusak accidentally shooting herself? No, it's not. Why not answer? Because there's no evidence of how it could accidentally happen. For instance, for it to be an accident, the gun would have to be laying on the pillow and based upon blood on both sides. One of those sides shouldn't get that blowback on it. The absence of soot. That's a direct quote. This is not, as the state attempts to recast it now, that one pillow was in the wrong spot or some minor detail like that. This is about the absence of soot and that being the foundation for the House of Cards. There's no soot, so this couldn't have been an accident. That was Englert's testimony. Is that the sole basis for Englert's opinion? What about the splatter evidence that he testified to as being a basis for his theory that this was done by someone standing above her? High velocity impacts splatter? Right. If the jury had heard, Your Honor, that this is someone who can't tell the difference between blood and soot, I find it very unlikely that they would have credited his testimony that these microscopic particles were deposited there by high velocity impact. Someone who has no training in physics or anything like that. If they had known, he doesn't even know what blood looks like. They're not going to credit that testimony. But with respect to it being an accident, the only reason he gave, this is page 3849 of the supplemental record, is the absence of soot. That was his direct quote. The other thing the state argues in this afternoon is that counsel was not ineffective for relying on an expert. There's so much fact finding packed into that statement. And remember, we're at the second stage here. How do we know he was relying on an expert? How do we know the expert didn't say to have this testing done? The only thing we know from the record is that the expert said that he didn't understand that this was an issue until Monday, meaning halfway through trial. The state's assuming that there was some conversation, that there was some advice. That's fact finding. And if we're going to go that route and say that counsel must have made some sort of strategic decision to rely on what his expert told him, the case law is very clear that that is a conclusion that can only be made at the third stage. And it was premature to make that decision here. My last point, Your Honors, is just taking a step back with respect to this forfeiture idea. The way this actually plays out, if we take a step back and look at the big picture, is that Mr. Kustak's ineffective assistance of counsel claim, his claim that my Sixth Amendment right to counsel was violated, has been forfeited because he received ineffective assistance of counsel on direct appeal and not raising it, and then received unreasonable representation at post-conviction. So Mr. Kustak's claim that he had bad lawyers should never be heard because he had bad lawyers. That's how this argument works when you actually unpack it. It's that he didn't have good lawyers at trial, didn't have good lawyers on appeal, he didn't have good lawyers on post-conviction, and that as a constitutional matter, his constitutional claim can therefore never be heard. That can't be right. We can't excuse ineffective assistance of counsel based on more ineffective assistance of counsel. That is fundamentally unfair. The Sixth Amendment requires more than that. And Mr. Kustak at least deserves the opportunity. Why wouldn't he have the right to file a successive post-conviction petition alleging ineffective assistance on post-conviction counsel or lack of reasonable representation based on the actions of post-conviction counsel? Your Honor, I think that he absolutely would do that. If that is the ruling here, that this claim was forfeited because post-conviction counsel didn't specify that the Sixth Amendment applies both at trial and on appeal, that is what will happen. But why do that? Why not resolve the issue on the merits now or send it back for an evidentiary hearing? Because we don't decide these cases on judicial expediency. We decide them on the law. So the fact that it may not be judicially expedient to let this thing play out is no excuse for deciding the issue when it shouldn't be decided because it was forfeited. And the petitioner here, Your Honor, is not asking the court to decide anything that's not before the court. The forfeiture issue is before the court. Forfeiture has exceptions. One of them is fundamental fairness. And the fundamental fairness exception applies here. The allegation of lack of reasonable representation by post-conviction counsel is not before the court. Correct. The allegation has never been made. Right. I'm not arguing that it has, Your Honor. So how do we get to the case? I was calling counsel out on time, Justice Hoffman, but if you have another question, please proceed. Thank you very much, Your Honor. All right. Thank you. Anything else from the panel? If not, the court will take the matter under advisement and you'll hear in due course. Thank you very much for your participation today.